IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KASIM B.,

          Plaintiff,

    v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

CIVIL ACTION FILE NO.

1:18-CV-2021-JFK

## FINAL ORDER AND OPINION

Plaintiff in the above-styled case brings this action pursuant to § 205(g) of the

Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision

of the Commissioner of the Social Security Administration which denied his

applications for disability insurance benefits ("DIB") and supplemental security

income ("SSI"). For the reasons set forth below, the court **ORDERS** that the

Commissioner's decision be **AFFIRMED**.

Plaintiff KASIM B. ("Plaintiff" or "the claimant") filed applications for DIB and

SSI on April 10, 2014, alleging that he became disabled on October 12, 2012. [Record

("R.") 206–220]. After his applications were denied initially and on reconsideration,

an administrative hearing was held before the Administrative Law Judge ("ALJ") on

April 14, 2016. [R. 47–77, 78–135]. The ALJ obtained additional evidence

subsequent to the hearing, namely, additional consultative examinations ("CEs") and written responses to interrogatories from the vocational expert ("VE") and this evidence was admitted without objection (along with Plaintiff's attorney representative's response).[1] The ALJ issued a decision denying Plaintiff's applications on June 23, 2017. [R. 16–44]. The Appeals Council denied Plaintiff's request for review on April 2, 2018. [R. 1–6]. Having exhausted his administrative remedies, Plaintiff filed a complaint in this Court on May 11, 2018, seeking judicial review of the final decision of the Commissioner. [Doc. 4].

## I. Statement of Facts

The ALJ found the following facts [R. 21–37] as modified herein.[2]

The claimant alleged that he cannot work because of mental health problems and a history of shoulder injury. [Exhibit 4E; Hearing Testimony, *passim*]. The claimant alleged difficulty lifting and reaching due to shoulder problems. For example, he

---

[1] [See Exhibits 18F–20F, 21E, and 23E–24E]. Plaintiff's counsel requested an additional psychological consultative examination. [Exhibit 19E]. The ALJ denied the request and noted that the record already contained multiple psychological evaluations such that another would be "superfluous." [R. 19].

[2] Because Plaintiff's attorney representative identified the claimant's borderline intellectual functioning as the primary disabling condition during the hearing [R. 54], a position consistent with Plaintiff's brief in support of remand [Docs. 12, 15], the Court's recitation of facts abbreviates the evidence regarding physical impairments.

AO 72A
(Rev.8/82)

stated that he can lift only 5 pounds and cannot lift his hand above the shoulder. The claimant also endorsed problems with his memory and stated that he performs tasks slowly. [Exhibit 4E]. At the hearing, the claimant testified that he never lived alone. According to the claimant, he lived with his grandparents until they died and then moved into a shelter.[3] The claimant stated that he has significant difficulty maintaining work pace. He reported difficulty understanding and focusing. The claimant said that he obtained his past work through vocational rehabilitation ("VR"), which included job training and coaching services. The claimant stated that he has been in contact with VR services since high school and has never obtained a job on his own (or without a job coach). The claimant testified that he cannot read at all (other than his own name) and cannot fill out a job application. Additionally, he reported ongoing problems related to his history of broken clavicle such as the inability to lift much weight.

---

[3] There is a discrepancy in the record about whether the claimant ever lived on his own in an apartment. [R. 59–61 (Plaintiff's testimony about living arrangements since grandparents' death); Exhibit 4E]. In evaluating the claimant's ability to adapt and manage himself at step three, the ALJ gave the claimant the benefit of the doubt on this issue and found that, even if the claimant lived independently for a period of time, the record still only reflected moderate limitations. [R. 27].

AO 72A
(Rev.8/82)

<u>Opinion Evidence – Mental or Non-exertional Limitations</u>

In October 2014, the claimant attended a psychological CE with Alexander Brikman, Psy.D. ("Dr. Brikman"). [Exhibit 8F].[4] Dr. Brikman noted that, while the claimant spoke with a thick accent, his English was passable and that, although an interpreter was present, the claimant did not require use of the interpreter during the evaluation. The claimant preferred to speak in English, and he exhibited generally clear, coherent, goal directed, and pressure-free speech. He properly initiated conversation and responded appropriately to all questions asked. He related to the evaluator in a neutral interpersonal manner and rapport building was easily established at the outset of the evaluation and maintained throughout. He made good eye contact. The claimant was oriented times four. His pace of mentation was only mildly slow. His memory for remote events was within normal limits. His thinking was lucid and clear, and his insight and judgment were fair. His persistence was poor mainly due to motivational factors. The Test of Nonverbal Intelligence, Fourth Edition ("TONI-IV") yielded an index score of 65, suggesting an extremely low range of intelligence. However, Dr. Brikman believed that these scores were invalid based on the fact that the claimant put forth little to no effort and on the outcome of the Rey's Test of

---

[4] The ALJ's decision includes two different spellings of Dr. Brikman's surname. [R. 25, 29–30 ("Brickman" and "Brinkman")]. The Court uses the spelling contained within Exhibit 8F, prepared by Dr. Brikman.

4

Malingering. The Wide Range Achievement Test ("WRAT-IV") also yielded a very low score (below pre-kindergarten level) on arithmetic. However, Dr. Brikman noted that these scores were also questionable. For instance, he noted that the claimant was often "one off" on his incorrect arithmetic responses.

Dr. Brikman diagnosed the claimant with borderline intellectual functioning and malingering. He opined that the claimant has no difficulty tolerating psychological stress and pressures associated with day-to-day work activity. He has no difficulty understanding, remembering and following simple to complex instructions on a sustained basis, but he would likely encounter moderate difficulty with more detailed instructions. According to Dr. Brikman, the claimant's sustained concentration is suspected to be within normal limits; however, he would be expected to perform at a mildly reduced paced. Moreover, the claimant would require a moderate degree of supervision primarily due to motivational factors. The ALJ gave Dr. Brikman's opinion significant weight with the qualification that the claimant has fairly significant limitations, which would prevent him from performing complex instructions. [R. 30].

In June 16, 2016, the claimant attended another psychological CE, this time with John Muller, Ph.D. ("Dr. Muller"). [Exhibit 18F]. The claimant stated that he is illiterate and cannot read very well. He reported feeling frustrated and hopeless. The mental status examination and testing revealed a number of significantly abnormal

AO 72A
(Rev.8/82)

results. For example, his attitude tended to be passive. He thought that it was July when it was June. He did not know what city he was in. He could not recall any of the 3 things he learned 10 minutes previously, what he had for dinner the night before, or the year of his graduation from high school. He could not spell the word "cat" forwards or backwards. Dr. Muller also administered the Weschler Adult Intelligence Scale, Fourth Edition ("WAIS-IV"), which revealed very low scores, including a full scale IQ of only 42, which suggested that the claimant was functioning in the moderate range of mental retardation. In Dr. Muller's opinion, however, these results were not a valid estimate of the claimant's mental functioning abilities. For example, Dr. Muller stated that the claimant failed the Rey's Malingering Protocol and put forth "no effort during the abilities testing." Dr. Muller stated that the claimant often missed sample items, "ostensibly on purpose" in a "naive attempt to exaggerate his intellectual limitations." Dr. Muller also based his finding of malingering and exaggeration on the facts that the claimant could go about in public by himself, he could probably prepare himself a simple meal, and he could keep up his household.

Dr. Muller diagnosed the claimant with malingering, borderline intelligence, and speech/sound disorder (without any current treatment). Dr. Muller opined that the claimant has mild limitation in understanding, remembering, and carrying out simple instructions and making judgments on simple work-related decisions, but extreme

AO 72A
(Rev.8/82)

limitations with respect to complex instructions and decisions. According to Dr. Muller, the claimant has moderate limitations in interacting with the public, supervisors, and co-workers, but marked limitation in responding appropriately to usual work situations and to changes in a routine work setting. Dr. Muller stated that the claimant would be able to understand simple job-related directions, which he would probably perform at a below-average pace. The ALJ gave significant weight to Dr. Muller's opinion that the claimant can perform simple work at a somewhat reduced pace as well as his opinion that the claimant has moderate limitations in social interactions. [R. 31]. The ALJ assigned little weight to Dr. Muller's conclusion that the claimant has marked limitation in responding appropriately to usual work situations and to changes in a routine work setting. [R. 31].

In February 2015, the claimant attended a psychological evaluation with Stacey Sweet, Psy.D. ("Dr. Sweet"), at the request of a VR Counselor. [Exhibit 13F]. Dr. Sweet's mental status examination and testing revealed a number of abnormal signs. For example, the claimant seemed irritable and somewhat nervous, and his social skills appeared to be awkward. According to Dr. Sweet, the claimant's accent and rapid speech made his speech difficult to understand. She found that the claimant presented as fidgety and easily distracted. Dr. Sweet also noted that the claimant seemed to have difficulty understanding instructions and that his verbal comprehension seemed to be

7

limited. Moreover, the WAIS-IV yielded scores in the extremely low range, including a full scale IQ of only 47. His word reading, spelling, and math computation scores were on the first grade level, and his sentence comprehension fell within the pre-kindergarten level.

In addition, Dr. Sweet observed that, although the claimant had never lived on his own, he admitted that he could cook, clean, do laundry, and shop without assistance. Dr. Sweet diagnosed the claimant with mild intellectual disability and adjustment disorder with mixed disturbance of emotions and conduct. Dr. Sweet opined that the claimant will struggle in any work placement and will likely do best in a day program with training in living skills and emotional adjustment. Dr. Sweet emphasized that social services are the top priority for Plaintiff because, without proper support and a stable living environment, the claimant's emotional and cognitive processing is unstable and poor. She recommended a referral to a program that can offer comprehensive social services and stated that the claimant appears to require housing assistance with a caretaker, living skills training, and emotional adjustment services. On the other hand, Dr. Sweet also noted that, with emotional stability, the claimant appears to be capable of learning basic, repetitive job tasks with close supervision and repetitive instruction and that, after a period of instruction and close supervision, the claimant may be capable of completing job tasks with more general

8

supervision and instruction. Dr. Sweet stated that the claimant is likely to work best in a slow-paced, structured work setting with supportive supervision. She opined that jobs requiring strong interpersonal skills may not be appropriate for the claimant. The ALJ assigned Dr. Sweet's testing scores little weight because there was no express statement as to the validity of the scores.[5] However, the ALJ also observed that "Dr. Sweet's opinion actually seems somewhat consistent with the [RFC]." [R. 32].

In December 2014, the State agency psychological consultant, George Hughes, Ph.D. ("Dr. Hughes"), concluded that the claimant has mild limitations in activities of daily living and moderate limitations in social functioning and with maintaining concentration, persistence, or pace. According to Dr. Hughes, the claimant had not had any episodes of decompensation of extended duration. [Exhibits 5A, 6A]. More specifically, he stated that the claimant will be able to remember location, work procedures, and simple instructions, but would have difficulty remembering many detailed instructions. Dr. Hughes opined that the claimant can carry out simple instructions, perform within a schedule, attend, and be punctual, but the claimant will struggle with detailed instructions. In Dr. Hughes' opinion, on occasion, the claimant may struggle to attend and to concentrate. However, Dr. Hughes explained that, the majority of the time, the claimant's concentration and attention should not be affected

---

[5] Dr. Sweet noted that the testing scores were what she expected. [R. 32].

beyond a moderate limitation. According to Dr. Hughes, the claimant can sustain a regular routine, can work around others and is able to remain focused most of the time and make simple work-related decisions. The claimant's pace may be slowed, though this may occur only occasionally per week. Dr. Hughes stated that, on occasion, the claimant may report issues to the point of distracting others momentarily, that some manipulation of co-workers may be attempted, that the claimant may interrupt co-workers, and that he may ask questions or request demonstrations on how to complete a task. Dr. Hughes stated that the claimant appears capable of dealing with brief supervision. The ALJ assigned the opinion of Dr. Hughes significant weight. [R. 33].

Collateral Source Statements

In April 2016, James Harrison ("Harrison"), a Board Member of the Journey Men's Shelter ("Shelter") where Plaintiff resides, provided a statement in support of the claimant's applications. [Exhibit 16E]. Harrison explained that he assisted the claimant in obtaining residence in the Shelter and that he continues to see the claimant at least once per month and speak with him via telephone on a fairly regular basis. According to Harrison, the claimant has significant difficulty in finding and holding employment and significant difficulty communicating, including reading, writing, and

AO 72A
(Rev.8/82)

verbal expression. [Exhibit 16E]. The ALJ gave Harrison's statement less weight than the psychological CEs. [R. 33–34].

Anthony Owens ("Owens"), a Shelter employee, also provided a statement in support of Plaintiff's applications. [Exhibit 18E]. Owens stated that he had known the claimant for over a year and reported significant limitations. For instance, Owens stated that the claimant does not know how to read and write, that he does not cook, and that he cannot carry out simple instructions unless constantly supervised. According to Owens, the claimant has lost four jobs since he has known him and is incapable of carrying out simple duties, such as washing dishes, mopping, and sweeping. The ALJ assigned Owens' opinion little weight. [R. 34].

<u>Medical / Opinion Evidence – Physical or Exertional Limitations</u>

As for musculoskeletal problems, the claimant attended a medical CE with Jessie Al-Amin, M.D. ("Dr. Al-Amin"), in October 2014. [Exhibit 7F]. The claimant reported a history of right shoulder and collarbone surgery. Indeed, an x-ray of the right shoulder revealed a healed fracture of the middle third of the clavicle. Moreover, the physical examination revealed some prominence of the right clavicle, as well as a decreased range of motion in the right shoulder. Dr. Al-Amin diagnosed the claimant with a right shoulder injury and pain. He opined that the claimant may lift as tolerated, that he can reach overhead but may have difficulty with above-right-shoulder work,

11

that he can handle objects without difficulty, that he has no difficulty sitting but prolonged standing or walking may be problematic, and that he may have some difficulty climbing stairs. The ALJ determined that Dr. Al-Amin's opinion was entitled to significant weight.[6] [R. 34].

In July 2014, State agency medical consultant, Karen Hulett, M.D. ("Dr. Hulett"), found on Initial Review that the claimant does not have any severe medical impairments. [Exhibits 1A, 2A]. In November 2014, on Reconsideration, State agency medical consultant, Shakoora Omonuwa, M.D. ("Dr. Omonuwa"), opined that the claimant can perform medium work, except that he can frequently reach in front and / or laterally, and frequently reach overhead with his right upper extremity, and that he must avoid concentrated exposure to pulmonary irritants. [Exhibits 5A, 6A]. The ALJ gave the opinions of the State agency physicians significant weight. [R. 35].

VE Hearing Testimony

During the administrative hearing before the ALJ, John D. Blakeman, an impartial VE, characterized the claimant's past relevant work as a Store Laborer as "Laborer, Stores" (Dictionary of Occupational Titles ("DOT") 922.687-058), which

---

[6] The ALJ detailed the medical evidence of record that supported her finding that the claimant did not have physical or exertional limitations to be incorporated into the RFC. [R. 24, 28, 34–35]. Plaintiff does not challenge this finding or this aspect of the ALJ's decision.

12

is considered medium and unskilled work with a Specific Vocational Preparation ("SVP") level of 2. [R. 74–75; Exhibit 23E].

The VE also initially identified the position of a Bagger, consistent with the claimant's identification of his past work. [R. 75; Exhibit 2E]. However, the VE stated that the position, although listed as a "Bagger" by the claimant, was more consistent with a Store Laborer classification.[7] [Exhibit 5E]. The claimant performed this work within the past 15 years, at substantial gainful activity levels and for a duration that would have allowed him to learn the job. [Exhibits 5E, 12D].

VE Responses To Post-Hearing Vocational Interrogatories

As noted *supra*, the ALJ supplemented the medical record in this case following the administrative hearing. As a result, the ALJ did not have the benefit of the most up-to-date medical findings to present to a VE at the hearing. The ALJ submitted written vocational interrogatories to the VE for responses. [Exhibit 23E]. The VE's interrogatory responses stated that, given the claimant's age, education, experience, and RFC, the hypothetical claimant would be capable of performing the claimant's past relevant work as a Store Laborer. [Exhibit 23E at 1]. The ALJ deemed the VE's testimony consistent with the information contained in the DOT pursuant to SSR

---

[7] This explains why the VE did not identify a separate Bagger position in his response to the vocational interrogatories. [Exhibit 23E at 1].

AO 72A
(Rev.8/82)

00-4p. Therefore, in comparing the claimant's RFC with the demands of his past relevant work, the ALJ found that the claimant is able to perform the Store Laborer position as it is generally performed. [R. 36].

Alternatively, the ALJ also found that the claimant was capable of performing other jobs existing in the national economy. [R. 36–37]. To determine the extent to which these limitations erode the unskilled medium occupational base, the ALJ asked the VE whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and RFC. [R. 37; Exhibit 23E]. The VE's response to the interrogatory stated that, given all of these factors, the individual would be able to perform the requirements of representative occupations such as: Laundry Worker (DOT # 361.685-018, medium and unskilled work, SVP of 2, with approximately 29,000 jobs in the national economy) and Housekeeping, Cleaner (DOT # 323.687-014, light and unskilled, SVP of 2, with approximately 926,000 jobs in the national economy). [Exhibit 23E]. The ALJ again found that the VE's testimony concerning the step five inquiry was consistent with the DOT. [R. 37]. Based upon the interrogatory responses submitted by the VE, the ALJ found that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. [R. 37].

14

## II.    Standard of Review

An individual is considered to be disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).   The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See 42 U.S.C. §§ 423(d)(2) and (3).

"We review the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards."  Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Id. at 1440.   "Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence."  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "'We may not decide the facts anew, reweigh the evidence, or substitute our judgment

15

for that of the [Commissioner].'" <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983)). "The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits." <u>Doughty v. Apfel</u>, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)). Under the regulations as promulgated by the Commissioner, a five step sequential procedure is followed in order to determine whether a claimant has met the burden of proving his disability. <u>See</u> <u>Doughty</u>, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he is not engaged in substantial gainful activity. <u>See</u> <u>id.</u> The claimant must establish at step two that he is suffering from a severe impairment or combination of impairments. <u>See</u> <u>id.</u> At step three, the Commissioner will determine if the claimant has shown that his impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. <u>See</u> <u>Doughty</u>, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920. If the claimant is able to make this showing, he will be considered disabled without consideration of age, education, and work experience. <u>See</u> <u>id.</u> "If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work." <u>Doughty</u>, 245 F.3d at 1278. "At the fifth step, the regulations direct the Commissioner to consider the

AO 72A
(Rev.8/82)

claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work." Id. If, at any step in the sequence, a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. See 20 C.F.R. §§ 404.1520(a), 416.920(a).

### III. Findings of Fact

1.     The claimant meets the insured status requirements of the SSA through December 31, 2018.

2.     The claimant has not engaged in substantial gainful activity since October 12, 2012, the alleged onset date.[8] [20 C.F.R. §§ 404.1571 et seq., and 416.971 et seq.].

3.     The claimant has the following severe impairments: borderline intellectual functioning, status post light shoulder surgery, and status post broken clavicle.[9] [20 C.F.R. §§ 404.1520(c) and 416.920(c)].

---

[8] The claimant worked after the alleged disability onset date, and the record shows above-substantial gainful activity earnings in the fourth quarter of 2012 and the first quarter of 2013. [Exhibit 6D]. Giving the claimant the benefit of the doubt, the ALJ found that the claimant's work in late 2012 and early 2013 was an unsuccessful work attempt. [R. 22].

[9] The ALJ found the following non severe impairments: visual acuity problems, musculoskeletal issues, respiratory impairment and / or asthma, and adjustment disorder. [R. 23–24, 33].   The ALJ stated that the claimant did not attend a CE to further evaluate Plaintiff's alleged hearing loss and determined that there was insufficient clinical or laboratory evidence to establish a medically determinable hearing impairment. [R. 22–23]. The ALJ stated that there was no medical evidence to show that the claimant underwent right leg surgery as reported by the claimant to the CE. [R. 24].

AO 72A
(Rev.8/82)

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926].

5.    The claimant has the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except that he is limited to occasional climbing of ladders, ropes and scaffolds, and occasional crawling.  He is limited to frequent overhead reaching with the right upper extremity.  The claimant is limited to simple and routine 1- to 3-step tasks with short oral instruction, simple work-related decisions, and no production pace work.  The claimant is also limited to infrequent and gradual workplace changes.  He is limited to occasional contact with the public and co-workers.  The claimant must also avoid concentrated exposure to hazards.

6.    The claimant is capable of performing his past relevant work as a Store Laborer.  This work does not require the performance of work-related activities precluded by the claimant's RFC.  [20 C.F.R. §§ 404.1565 and 416.965].

7.    The claimant has not been under a disability, as defined in the SSA, from October 12, 2012, through June 23, 2017.  [20 C.F.R. §§ 404.1520(1) and 416.920(1)].

[R. 21–22, 24, 28, 36–37].

## IV.    Discussion

On appeal, Plaintiff contends that the ALJ committed reversible error by failing to expressly state the weight she assigned to all of the medical opinion evidence.  More specifically, Plaintiff argues that the ALJ rejected the IQ scores found by Dr. Sweet but then failed to indicate the weight attributed to the rest of the opinion and limitations Dr.

18

Sweet proposed, and that, for this reason, the ALJ's RFC determination is legally insufficient and not supported by substantial evidence. As discussed below, the Court finds that the ALJ properly evaluated the medical opinion evidence and applied the proper legal standards in formulating Plaintiff's RFC. Accordingly, the Court will affirm the decision of the Commissioner.

### A.     The RFC Assessment

"The [RFC] is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments. . . . Along with his age, education and work experience, the claimant's [RFC] is considered in determining whether the claimant can work." Lewis, 125 F.3d at 1440 (citing 20 C.F.R. §§ 404.1545(a), 404.1520(f)). "RFC includes physical abilities, such as sitting, standing or walking, and mental abilities, such as the ability to understand, remember and carry out instructions or to respond appropriately to supervision, coworkers and work pressure." Dempsey v. Comm'r of Social Security, 454 Fed. Appx. 729, 731 n.3 (11th Cir. 2011) (citation omitted). In determining the claimant's RFC, the ALJ is required to consider the limiting effects of all the claimant's impairments, even those that are not severe. See Phillips, 357 F.3d at 1238 ("[T]he ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case."); 20 C.F.R. § 404.1545(e).

Social Security Ruling 96-8p provides, "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."

The ALJ's evaluation of the medical source opinion evidence is discussed first as it informs formulation of the RFC.

### B. Evaluation of Medical Opinion Evidence

"There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians." Himes v. Comm'r of Social Security, 585 Fed. Appx. 758, 762 (11th Cir. 2014) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2),416.927(c)(1)-(2)); accord Lee v. Colvin, 2015 WL 5307513, at *3 (M.D. Fla. September 10, 2015) ("The Regulations establish a 'hierarchy' among medical opinions that provides a framework for determining the weight afforded each medical opinion . . . ."). "The opinions of examining physicians are generally given more weight than non-examining physicians; treating physicians receive more weight than non-treating physicians; and specialists on issues within their areas of expertise receive more weight than non-specialists." Schuhardt v. Astrue, 303 Fed. Appx. 757, 759 (11th Cir. 2008) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)).

AO 72A
(Rev.8/82)

It is well established that the determination about whether a claimant has met the statutory definition of disability is reserved to the Commissioner and, for that reason, a medical source's opinion that a claimant is disabled is not controlling. See 20 C.F.R. §§ 404.1527(d), 416.927(d); Bell v. Bowen, 796 F.2d 1350, 1353–54 (11th Cir. 1986) (quoting § 404.1527 for proposition that the Commissioner determines disability notwithstanding claimant's physician's statement that claimant is "disabled" or "unable to work"); accord Eyre v. Comm'r, Social Security Admin., 586 Fed. Appx. 521, 523 (11th Cir. 2014) (citations omitted).

The Eleventh Circuit has consistently held that opinions of treating physicians must be accorded substantial or considerable weight by the Commissioner unless good cause exists to discredit these opinions.[10] See Lewis, 125 F.3d at 1440; Lamb v Bowen, 847 F.2d 698, 703 (11th Cir. 1988); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); Broughton v. Heckler, 776 F.2d 960, 961 (11th Cir. 1985). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion

---

[10] "New regulations eliminated the treating physician rule last year, see 20 C.F.R. § 404.1520c, but the rule is effective only for claims filed after March 27, 2017 . . . . For claims . . . that were filed before March 27, 2017, the rules in § 404.1527 continue to apply." Rainey v. Berryhill, 731 Fed. Appx. 519, 523 n.2 (7th Cir. 2018).

AO 72A
(Rev.8/82)

was conclusory or inconsistent with the doctor's own medical records.'" <u>Winschel v. Comm'r of Social Security</u>, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting <u>Phillips</u>, 357 F.3d at 1241). An ALJ may disregard a treating physician's opinion with good cause, but his reasons for doing so must be clearly articulated in his decision. <u>Id.</u> In determining the weight attributable to medical opinions, the Commissioner is required to consider the following factors: (1) examining relationship; (2) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) any other relevant factors. <u>See</u> 20 C.F.R. §§ 404.1527(c), 416.927(c).

In the instant case, because the Plaintiff did not have a treating psychologist or psychiatrist, there is no treating source opinion regarding his mental impairments and limitations. As discussed *supra*, the SSA ordered the administration of multiple CEs and each CE consisted of a single examination. Dr. Sweet's evaluation of Plaintiff – requested by VR Services – also consisted of one visit. Accordingly, Drs. Brikman (Psy.D.), Muller (Ph.D), and Sweet (Psy.D.), are all non-treating sources (possibly all considered specialists) whose respective evaluations were limited to a single occasion or single examination of Plaintiff.[11] Dr. Hughes did not examine Plaintiff but possesses

---

[11] If equally supported by objective medical evidence, these medical opinions are entitled to the same weight. <u>See</u> FEDERAL PROCEDURE, SOCIAL SECURITY AND MEDICARE, § 71:250, Supportability (2019) (citing <u>Atterberry v. Secretary of</u>

AO 72A
(Rev.8/82)

certain expertise as a State agency psychologist consultant. See Brandt v. Astrue, 2010 WL 746446, at *7 (M.D. Fla. March 3, 2010) (citing 20 C.F.R. § 1527(f)(2); SSR 96-6P) ("State agency medical consultants are considered experts in disability evaluation, and their opinions may provide substantial evidence to support a finding of no disability.").

As explained herein, the Court finds that the ALJ properly evaluated the medical source opinions, including the opinion of Dr. Sweet.

## 1. Dr. Brikman

As previously discussed, Dr. Brikman diagnosed the claimant with borderline intellectual functioning and malingering and opined that the claimant has no difficulty tolerating psychological stress and pressures associated with day-to-day work activity, no difficulty understanding, remembering, and following simple to complex instructions on a sustained basis but would likely encounter moderate difficulty with more detailed instructions, and that the claimant's sustained concentration is suspected to be within normal limits, however, he would be expected to perform at a mildly reduced pace. [Exhibit 8F]. Dr. Brikman also opined that the claimant would require

Health and Human Services, 871 F.2d 567, 572 (6th Cir. 1989)) (psychologist who evaluated claimant on single occasion was not a treating physician and opinion was to be weighed as any other consulting examination).

AO 72A
(Rev.8/82)

a moderate degree of supervision due to motivational factors. The ALJ gave Dr. Brikman's opinion significant weight with the qualification that the claimant has fairly significant limitations, which would prevent him from performing complex instructions.

The ALJ adequately explained her rationale in assigning significant weight to Dr. Brikman's opinion (with the exception noted above). As detailed by the ALJ, Dr. Brikman's opinion was based on a thorough examination and supported by an explanation for his conclusion regarding poor effort/exaggeration. The ALJ explained that Dr. Brikman's opinion was consistent with her discussion of the "paragraph B criteria" at step three, which reflects significant abilities, including significant cognitive functioning.[12] For example, the ALJ stated that, despite contradicting allegations, the record shows that the claimant can independently shop, use public transportation, handle money, prepare meals, care for his personal hygiene, and perform chores. Moreover, the ALJ pointed to the claimant's ability to work at

---

[12] In evaluating the severity of the claimant's mental impairments for purposes of the Listings (Listing 12.11) at step three of the sequential evaluation process, the ALJ considered the "paragraph B" criteria and found that the claimant had no more than moderate limitations in any of the relevant areas: understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. [R. 24–27].

AO 72A
(Rev.8/82)

substantial gainful activity levels for the same employer for a number of years, even if, allegedly, this work was associated with VR services. [Exhibit 6E]. The ALJ also deemed Brikman's conclusions generally consistent with Dr. Muller's CE in June 2016. Lastly, the ALJ pointed to Dr. Brikman's note that the claimant correctly produced 5 of 15 items on the Rey's Test of Malingering, which raised a "strong suspicion of symptom exaggeration."

With respect to Plaintiff's claim of suspected bias, the claimant's attorney representative suggested to the ALJ that Dr. Brikman's findings should be disregarded. [R. 60]. At the hearing, the representative made much of the fact that Dr. Brikman referenced the presence of a Somali interpreter at the evaluation. [R. 60, 70–71]. However, the ALJ addressed the question of bias at length and found that Dr. Brikman's findings and conclusions are supported and explained by his observations and are not rooted in bias against the claimant. [R. 30–31]. More specifically, Dr. Brikman documented numerous inconsistencies in the claimant's allegations and noted that the claimant made a number of what he called "contrived allegations regarding his cognitive limitations." Dr. Brikman also observed that the claimant put forth generally low effort during the formal mental status examination (i.e., the claimant could not count backwards from ten to one; when asked to point up, he pointed down and vice

25

versa; and he refused to learn 3 common words in English and Somali, stating that he could not do that).[13]

### 2. Dr. Muller

Dr. Muller diagnosed the claimant with malingering, borderline intelligence, and speech/sound disorder. [Exhibit 18F]. Dr. Muller opined that the claimant has mild limitation in understanding, remembering, and carrying out simple instructions and making judgments on simple work-related decisions, but extreme limitations with respect to complex instructions and decisions. According to Dr. Muller, the claimant has moderate limitations in interacting with the public, supervisors, and co-workers, but marked limitation in responding appropriately to usual work situations and to changes in a routine work setting. Dr. Muller stated that the claimant would be able to understand simple job-related directions, which he would probably perform at a below-average pace. The ALJ gave significant weight to Dr. Muller's opinion regarding the claimant's ability to perform simple work at a somewhat reduced pace with moderate limitations in social interactions. [R. 31].

---

[13] The ALJ pointed out the fact that the claimant was able to understand and complete simple instructions during his medical consultative the very same month as Dr. Brikman's evaluation, which shows that the claimant should have been able to discern between "up" and "down." [Exhibit 7F].

The ALJ adequately explained her assessment of Dr. Muller's opinion. According to the ALJ, Dr. Muller's conclusions in these areas were based on an examination of the claimant, as well as a reasonable explanation for his findings. [R. 31]. The ALJ also found this aspect of Dr. Muller's opinion generally consistent with the opinion of Dr. Brikman as well as the claimant's admitted activities of daily living, work history, and the lack of mental health treatment during the relevant time period. [R. 31]. In contrast, the ALJ discounted Dr. Muller's conclusion that the claimant has marked limitation in responding appropriately to usual work situations and to changes in a routine work setting. [R. 31]. The ALJ assigned little weight to this part of Dr. Muller's opinion and stated that Dr. Muller failed to provide an explanation for this conclusion and that Dr. Muller observed instead that the claimant's attitude and moods were generally stable. [R. 31–32]. The ALJ emphasized that the claimant has never sought any mental health treatment for mood problems and that medical notes from various ER visits show that the claimant consistently exhibited an unremarkable affect. [Exhibit 2F at 9; Exhibit 4F at 2; Exhibit 6F at 2].

### 3. Dr. Sweet

Plaintiff's primary contention is that the ALJ's decision fails to explain the weight assigned to all of the proposed limitations contained within Dr. Sweet's report

27

and, therefore, that the RFC is legally insufficient and not supported by substantial evidence. [Doc. 12]. Plaintiff further contends that Dr. Sweet's opinion and the limitations assessed within the opinion are inconsistent with competitive work. [Doc. 12 at 13–14].

As recited *supra*, Dr. Sweet diagnosed the claimant with mild intellectual disability and adjustment disorder with mixed disturbance of emotions and conduct.[14] [Exhibit 13F]. In Dr. Sweet's opinion, the claimant will struggle in any work placement and will likely do best in a day program with training in living skills and emotional adjustment. However, Dr. Sweet also opined that, with emotional stability, the claimant appears to be capable of learning basic, repetitive job tasks with close supervision and repetitive instruction and that, after a period of instruction and close supervision, the claimant may be capable of completing job tasks with more general supervision and instruction. Dr. Sweet stated that the claimant is likely to work best in a slow-paced, structured work setting with supportive supervision. She opined that jobs requiring strong interpersonal skills may not be appropriate for the claimant.

---

[14] The ALJ found any adjustment disorder non-severe. [R. 33].

With the exception of giving Dr. Sweet's testing scores little weight, the ALJ did not explicitly assign a weight to the remainder of Dr. Sweet's opinion.[15] According to the Commissioner, the ALJ (implicitly) gave the remaining portions of Dr. Sweet's RFC opinion significant weight. [Doc. 14 at 10–11]. The Court disagrees based upon the plain language employed by the ALJ, namely, that Dr. Sweet's opinion is "somewhat consistent with the [RFC.]" [R. 32]. The ALJ supported her conclusion with numerous similarities and consistencies between Dr. Sweet's findings and the RFC – and the ALJ considered these consistencies a sufficient basis to credit certain of Dr. Sweet's findings, including the following:

– "[T]he claimant appears to be capable of learning basic, repetitive job tasks with close supervision and repetitive instruction[;]"

– "After a period of instruction and close supervision, the claimant may be capable of completing job tasks with more general supervision and instruction[;]"

– "[T]he claimant is likely to work best in a slow-paced, structured work setting with supportive supervision;" and

– "[J]obs requiring strong interpersonal skills may not be appropriate for the claimant."

---

[15] According to the ALJ, Dr. Sweet's statement that the claimant may be able to perform repetitive job tasks in a slow paced and structured setting with limited interpersonal contact after some stabilization could suggest that he does not have the type of underlying cognitive problems implied by the IQ score of only 47. [R. 33].

29

[R. 3–33].[16]   In light of the above, the undersigned reads the ALJ's decision as having

assigned Dr. Sweet's RFC opinion only partial or some weight.[17]

And even if the Court agreed that the ALJ assigned significant weight to all of

Dr. Sweet's findings except the testing scores, the error would still be harmless given

that the RFC encompasses most of Dr. Sweet's proposed limitations.   When read as

a whole, the ALJ's opinion makes clear 1) that Dr. Sweet's medical opinion was

thoroughly considered by the ALJ and 2) the portions of Dr. Sweet's opinion that the

ALJ credited and discounted.   See Short v. Comm'r of Social Security, 581 Fed.

Appx. 754, 756–57 (11th Cir. 2014).  For this reason, the Court finds any purported

---

[16] The Commissioner spoke to the consistencies between Dr. Sweet's opinion and the ALJ's RFC in detail within its memorandum of law and attempted to equate or match Dr. Sweet's findings to a limitation within the RFC.  [Doc. 14 at 9–10].

[17] In reply, counsel for Plaintiff noted the Commissioner's contention that significant weight was given to the bulk of Dr. Sweet's findings and then cited case law analyzing the ALJ's assignment of great weight to a medical opinion while simultaneously failing to adopt one or more of the limitations contained in the opinion without an explanation as to why a limitation is discounted.  [Doc. 15 at 2–3].  And see, e.g., Watkins v. Comm'r of Social Security, 457 Fed. Appx. 868, 871‒72 (11th Cir. 2012) (finding that the ALJ erred when he "gave great weight to Dr. Feussner's RFC evaluation" but failed to incorporate the physician's "sit/stand limitation into his RFC finding or to give a reason for not doing so"); see also Rosario v. Comm'r of Social Security, 2014 WL 667797, at *3 (M.D. Fla. February 20, 2014) (citations omitted).  Because the Court finds that the ALJ did not assign significant weight to the opinion of Dr. Sweet, there is no reversible error based upon the evaluation of the medical opinions of record.

AO 72A
(Rev.8/82)

error harmless.  See <u>Diorio v. Heckler</u>, 721 F.2d 726, 728 (11th Cir. 1983) (holding that ALJ mistake is harmless error if it does not affect ultimate conclusion).  In short, a "perfect decision" from the ALJ is simply not required.  [Doc. 14 at 11–12].  <u>And see Character v. Colvin</u>, 2015 WL 1481114, at *11 (N.D. Ga. March 31, 2015) (affirming denial of benefits and finding no reversible error in ALJ's evaluation of claimant's subjective complaints of pain; "[t]he ALJ's decision is, of course, not perfect.").

Finally, it is appropriate to recognize that Dr. Sweet's evaluation was conducted at the request of VR and not the SSA.[18]  As such, Dr. Sweet's medical opinion must be viewed and evaluated within this context.  Plaintiff's counsel's emphasis on the proposed suggestions concerning providing Plaintiff with supervision in the workplace, a job coach, an array of social services, and, ideally, "a supportive situation like a day training program" is misplaced.[19]  [Doc. 15 at 2–3].

---

[18] Plaintiff, through his representative, argued at the administrative hearing that the opinion of Dr. Sweet was entitled to the most weight because the evaluation conducted by Dr. Sweet was not undertaken with an eye towards getting benefits but rather the goal was towards getting Plaintiff a job and, therefore, was "the most unbiased[.]"  [R. 54–55].

[19] Dr. Sweet describes the ideal employment situation and environment for this Plaintiff, which does not necessarily mean that these types of limitations are required by the SSA.

31

The Court finds that the ALJ applied the proper legal standards in her evaluation of Dr. Sweet's medical opinion and adequately explained her rationale.

**4.     Dr. Hughes**

Dr. Hughes reviewed the record and concluded that Plaintiff has only mild limitations in activities of daily living and no more than moderate limitations in both social functioning and with maintaining concentration, persistence, or pace.  [Exhibit 5A, 6A].  Dr. Hughes specifically addressed Plaintiff's ability to remember location, work procedures, and simple instructions and his ability to carry out simple instructions, perform within a schedule, attend, and be punctual.  According to Dr. Hughes, Plaintiff can sustain a regular routine, is able to work around others and remain focused most of the time and make simple work-related decisions, and is capable of dealing with brief supervision.

The ALJ assigned the opinion of Dr. Hughes, State agency psychological consultant, significant weight.  [R. 33].  The ALJ explained that Dr. Hughes' opinion is based on program knowledge and the evidence of record available for review.  [R. 33].  The ALJ found Dr. Hughes' opinion generally consistent with the opinions of the psychological CEs, as well as the evidence of record addressed in weighing their

opinions, such as the claimant's activities of daily living, his work history, and the absence of mental health treatment. [R. 33].

**5.    Summary**

In conclusion, the Court finds that the ALJ's consideration of the medical opinion evidence and the record as a whole comports with the applicable law and is supported by substantial evidence.[20]

**C.    Substantial Evidence Supports The ALJ's RFC Determination**

As detailed herein, the ALJ identifies substantial evidence to support her RFC determination.  The ALJ's RFC for Plaintiff reads:

> The claimant has the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except that he is limited to occasional climbing of ladders, ropes and scaffolds, and occasional crawling.  He is limited to frequent overhead reaching with the right upper extremity.  The claimant is limited to simple and routine 1- to 3-step tasks with short oral instruction, simple work-related decisions, and no production pace work.  The claimant is also limited to infrequent and gradual workplace changes.  He is limited to occasional contact with

---

[20] As an alternative basis for denying benefits, the VE's responses to post-hearing vocational interrogatories establishes that Plaintiff is capable of performing work that exists in significant numbers in the national economy.  See Hurtado v. Comm'r of Social Security, 425 Fed. Appx. 793, 795 (11th Cir. 2011) ("At the fifth step of the sequential process, an ALJ may rely solely on the testimony of a VE in determining whether work is available in significant numbers in the national economy that a claimant is able to perform.")  (citing Jones v. Apfel, 190 F.3d 1224, 1230 (11th Cir. 1999)).

33

the public and co-workers. The claimant must also avoid concentrated exposure to hazards.

[R. 28].

Here, the ALJ relied heavily upon CEs and the RFC opinions of State agency physician / psychological consultants plus other evidence of record to support the RFC. Briefly, the restriction concerning "simple and routine 1-to-3 step tasks with short oral instruction" is supported by the medical opinions of Dr. Brikman, Dr. Muller, Dr. Sweet, and Dr. Hughes. The restriction that the claimant be expected to navigate "simple work-related decisions" is supported by Dr. Hughes' opinion. And the limitation as to "no production pace work" is supported by the opinions of Dr. Brikman and Dr. Hughes. The social interaction limitations are likewise supported by Dr. Muller and Plaintiff's own Adult Function Report. [Exhibit 4E]. However, the undersigned reiterates that the ultimate responsibility for reconciling the competing evidence of record and for fashioning Plaintiff's RFC is within the province of the ALJ. See Wind v. Barnhart, 133 Fed. Appx. 684, 691–93 (11th Cir. 2005).

To the extent that Plaintiff posits that the RFC is not supported by substantial evidence, the record demonstrates otherwise. Plaintiff, through counsel, invites the Court to reweigh the evidence and disregard the parameters of substantial evidence

AO 72A
(Rev.8/82)

review.  See Moore v. Barnhart, 405 F.3d 1208, 1213 (11ᵗʰ Cir. 2005) (emphasizing

"the narrowly circumscribed nature of [the court's] appellate review, which precludes

us from 're-weigh[ing] the evidence or substitut[ing] our judgment for that [of the

Commissioner] . . . even if the evidence preponderates against' the decision") (quoting

Bloodsworth, 703 F.2d at 1239).  The Court declines that invitation.

## V.      Conclusion

For all the foregoing reasons and cited authority, the Court concludes that the

decision of the ALJ was supported by substantial evidence and was the result of an

application of proper legal standards.   It is, therefore, **ORDERED** that the

Commissioner's decision be **AFFIRMED**.   The Clerk is **DIRECTED** to enter

judgment in favor of the Commissioner.

**IT IS SO ORDERED THIS** 9ᵗʰ day of September, 2019.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

35